**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROXANNE ARTHUR,

        Plaintiff,

    vs.                                                                No. 13-CV-1173-MV-WPL

BLOOMFIELD SCHOOL DISTRICT,
*et al.*,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Bloomfield Board of Education's and Defendant Bloomfield School District's (collectively, the "Governmental Defendants") Partial Motion to Dismiss [the] First Amended Complaint [Doc. 72]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that the Defendants' Motion is well-taken in part and will be **GRANTED IN PART**.

## BACKGROUND

Plaintiff Roxanne Arthur was a School Social Worker employed by the Bloomfield School District (the "BSD" or the "District") from May 8, 2002 until August 31, 2012. Doc. 62 ¶¶ 20-21. Defendant Rob Ford was, during a portion of the period covered by the First Amended Complaint, an employee of the BSD and the Principal of Mesa Alta Junior High ("Mesa Alta" or the "School"). *Id.* ¶ 5. For reasons that will become apparent below, the Court notes that "Plaintiff is a Native American female from the Navajo tribe." *Id.* ¶ 18.

The gravamen of Arthur's First Amended Complaint is a pattern of racially-motivated workplace harassment that continued over a period of years and culminated in her resignation from the District.  The most severe and specific of these allegations center on the behavior of then-Principal Rob Ford, who Plaintiff alleges "encouraged another individual employed by the Bloomfield Police Department, Tina Adair ('Adair'), to text Arthur" and use the term "squaw" in the message.  *Id.* ¶ 25.  The Court takes judicial notice that "squaw" is an offensive appellation used to describe a Native American woman.  *See, e.g.*, *Spillway Marina, Inc. v. United States*, 445 F.2d 876, 878 (10th Cir. 1971) ("Courts take judicial notice of facts which are generally known and accepted.").  According to Arthur, Ford "admitted to" this conduct.  *Id.*  Arthur then requested that Ford refrain from using term "squaw" to refer to her, "as she felt this was derogatory."  *Id.* ¶ 26.  Despite Arthur's objection, Ford continued to use the epithet to refer to Arthur in conversation with "fellow co-workers."  *Id.* ¶ 27.  By way of example, Plaintiff states that Patricia Hollembeak, a fellow District employee, informed Plaintiff "that Ford continued to call Plaintiff vulgar names after Plaintiff asked him to stop" including using the phrase "fat squaw" to refer to Arthur.  *Id.* ¶ 28.

Evidently, this behavior was not limited to Ford's interactions with Arthur or directed solely at people of Native American descent.  Arthur asserts that "[o]n numerous previous occasions Ford made racial slurs to other employees and students" in the District.  *Id.* ¶ 29.  In one such instance, after the "students had participated in a mock election and elected Barrack [sic] Obama," Ford announced over the intercom that "the students had elected 'Obama Bin Laden' as their next President."  *Id.* ¶ 30.  Similarly, while in Arthur's presence, "Ford told a Navajo student" that "he knew the student wanted to have sexual intercourse with Ford" and then "proceeded to call the student a derogatory name."  *Id.* ¶ 31.  Further, Arthur notes that "Ford

was known to use the word 'nigger' to identify African-Americans" and "has a history of using racial slurs." *Id.* ¶¶ 32, 33.

Evidently, Plaintiff's employment relationship began to deteriorate and, on August 24, 2011, "Allan Bassing, Interim Principal of Mesa Alta" informed Arthur that "she would be required to document all contacts she made with individuals on a form" even though other "School Social Workers" were not required to produce similar documentation until months later. *Id.* ¶¶ 37, 38.  The somewhat opaque rationale provided by Bassing was that the "required document would allow [the] administration to be aware of Plaintiff's actions." *Id.* ¶ 39.  The following day, according to Arthur, "Bassing coached a student regarding how to file a grievance against Plaintiff" and "told this student that once the student's grievance reached the Superintendent's office, the real trouble would start for Plaintiff." *Id.* ¶ 41.  Plaintiff adds that a co-worker informed her that "Bassing had concluded there was validity to this student's complaint without investigating the situation, in violation of Plaintiff's due process rights," though Plaintiff did not pursue this alleged violation any farther.  *Id.* ¶ 42.

The precise timeline of the events at issue is unclear from Plaintiff's First Amended Complaint, but it appears that, at some point, Arthur was asked to leave her position at the School and that Acting Interim Principal Jessica Sledzinski "admitted" to Arthur that Sledzinski had "told Beth Hamilton that Plaintiff caused Ford to resign" as Principal of the School.  *Id.* ¶¶ 43-48.  Then, on August 28, 2011, Arthur "filed a grievance" with the District's "Director of Human Resources, Deborah Serrano" for retaliation, citing Bassing's conduct; Plaintiff alleges that her complaint was "not fully investigated" by the District.  *Id.* ¶ 49.

Arthur then alleges that her "office at Mesa Alta was moved without her consent or knowledge" and that on May 24, 2012, she filed a "complaint with [the new] Mesa Alta Principal

William C. Noland" about a co-worker who had been "spreading malicious rumors" about Plaintiff; these rumors do not appear to have had a racial valence. *Id.* ¶ 52. Finally, at some point around August 1, 2012, Plaintiff resigned from her position, "due to the intolerable working conditions," though, again, the First Amended Complaint leaves the specifics of this separation vague. *Id.* ¶¶ 21-22, 57-59.

In an effort to vindicate her rights, "Plaintiff filed a Charge of Discrimination on the basis of race and sex discrimination with the Equal Employment Opportunity Commission" on July 27, 2011 and filed an amended charge on October 3, 2012, after she had separated from her employer. *Id.* ¶ 8. Arthur states that the EEOC conducted an investigation into the charges and the Department of Justice issued her a Right to Sue letter on September 11, 2013, after determining that they would not pursue the matter themselves. *Id.* ¶ 9. On December 10, 2013, Plaintiff filed her original Complaint [Doc. 1] with this Court, alleging "Racial Discrimination," "Retaliation," "Constructive Discharge," and "Punitive Damages" in violation both of Title VII of the Civil Rights Act of 1964 and of the common law of New Mexico. *See generally* Doc. 1. On July 25, 2014, Plaintiff filed her First Amended Complaint [Doc. 62], which includes the same four counts, but adds as a Defendant the Bloomfield School Board. *See generally* Doc. 62. The two governmental Defendants now move to dismiss portions of Plaintiff's First Amended Complaint. *See generally* Doc. 72.

## DISCUSSION

### I.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b) provides that a civil defendant may move to dismiss particular claims or an entire action, including for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). Hence, a fundamental predicate of this

4

framework is that the Plaintiff's "claim" be legally cognizable; if a given claim is not recognized, it patently cannot form a basis for relief.

On a motion to dismiss for failure to state claim, this Court asks "whether the factual allegations in the complaint, if accepted as true, allege a plausible claim for relief." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1236 (10th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). That is, the "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial" but to determine whether the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-56 (10th Cir. 2014) (internal quotation marks and citations omitted). Consequently, although affirmative defenses ordinarily cannot be asserted in a motion to dismiss, a Court may dismiss on statute of limitations grounds if the defense appears on the face of the complaint. *See, e.g.*, *Mercer v. Gupta*, 712 F.3d 756, 758 (2d Cir. 2013) (an affirmative defense "may be raised on a motion to dismiss if the defense is based on facts appearing on the face of the complaint"); *Williams v. Bd. of Regents of the Univ. of New Mexico*, No. CIV 13–0479 JB/WPL, 2014 WL 4351533, at *10 (D.N.M. Aug., 2014) (the Court may only dismiss based on the statute of limitations where "the defense appears plainly on the face of the complaint itself").

## II.     Plaintiff's Claim for Punitive Damages

Plaintiff's "claim" for punitive damages must be dismissed. Punitive damages, as their name indicates, are a form of relief, not an independent claim. *See, e.g.*, *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case. It is part and parcel of a liability determination."); *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir.

1992) ("A request for damages, however, does not constitute a cause of action; rather damages are a remedy for a legal wrong.").  Whether or not punitive damages might be available to Plaintiff if she prevails on one of her remaining claims is a separate matter, though the Court notes that punitive damages ordinarily may not be imposed against public entities.  *See generally City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) (discussing punitive damages in the context of suits against organs of the government).  Indeed, Plaintiff's Response speaks entirely past this point, arguing instead that her *other causes of action* entitle her to punitive damages. *See* Doc. 77 at 4-6.  Therefore, Plaintiff's separate claim for "Punitive Damages" must be dismissed.

### III.    Plaintiff's Claim for Constructive Discharge

Plaintiff's claim for "Constructive Discharge" presents a more complicated question. Although Plaintiff's First Amended Complaint is infelicitously phrased, the Court believes that this count states a claim on which relief can be granted; although "constructive discharge" may not be an independent cause of action, it is certainly a potential theory for seeking recovery from the Defendants predicated on racial discrimination in violation of Title VII.  *See, e.g.*, *Baker v. Baxa Corp.*, No. 09–cv–02034–MSK–KLM, 2011 WL 650002, at *1 (D. Colo. Feb. 11, 2011) (constructive discharge is a "legal fiction" that "can satisfy the element of an adverse employment action in a substantive claim, but it does not constitute a claim by itself.  Thus, like doctrine of *respondeat superior,* constructive discharge is not a standalone 'claim'").

Viewed in concert with Plaintiff's count charging "Racial Discrimination," it appears that there are several possible reasons for separating the two items, including, for example, pleading two potential routes to imposing liability on the Governmental Defendants:  *actual* tangible employment action and constructive discharge that substitutes for such tangible employment

action.  *See generally Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27 (1st Cir. 2003);

*Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).  While this may ultimately amount to

two counts that address the same basis for liability, the Court will not, at this stage, strike the

count for constructive discharge as duplicative.

IV.    **Plaintiff's New Mexico Common Law Claims**

At this juncture, the Court is compelled to address the question of Plaintiff's claims

arising from the common law of New Mexico, which, to this point, Plaintiff appears to have

ignored studiously.  While Arthur does not state with any specificity where in the common law

these claims might reside, the Court finds that any such claims must sound in tort.  First, because

Arthur refers to the "common law," any statutory cause of action must be excluded.  *Cf. Lopez v.*

*Maez*, 98 N.M. 625, 629 (1982) (explaining that "the common law as recognized by the United

States is the rule of practice and decision in New Mexico, except if it has been superceded [sic]

or abrogated by statute" and "common law doctrine is judicially created").  Second, the

allegations in the First Amended Complaint make no mention of any purported property interest

or contractual violation.  *See generally* Doc. 62.  By deduction, then, the Plaintiff's common law

claims must reside somewhere in the realm of common law tort.  This comports with the

admittedly broad factual allegations in the First Amended Complaint, which refer, in each of the

three remaining counts, to "pain and suffering" that have arisen as a "direct and proximate result

of Defendant's actions."  Doc. 62 ¶¶ 35, 53, 63.  Plainly, this is the language of tort.

However, the New Mexico "Tort Claims Act [is] the exclusive remedy against a

governmental entity or public employee" and "no other claim, civil action or proceeding for

damages, by reason of the same occurrence, may be brought against a governmental entity or

against the public employee."  N.M.S.A. 1978, § 41-4-17(A).  *See also* N.M.S.A. 1978, § 41-4-

3(B) & (C) (defining a "governmental entity" to include a "local public body" and "local public

body as "all political subdivisions of the state and their agencies, instrumentalities and

institutions").  Thus, any viable claim against the governmental Defendants must be statutory in

origin, but Plaintiff has not alleged any basis in New Mexico statutory law.  Consequently,

Plaintiff's state law claims against the governmental Defendants will be dismissed.

## V.     Statute of Limitations

Defendant argues that "any [Title VII] claims alleging discrimination based on events

that occurred prior to September 30, 2010" or "alleging retaliation that occurred prior to

December 8, 2011" must be dismissed because they occurred more than 300 days before Arthur

filed her Charge of Discrimination and Amended Charge of Discrimination, respectively.  Doc.

72 at 5-6.  Plaintiff and Defendants appear to agree that "Plaintiff states several acts that she

alleges occurred" within the 300 day period for filing a Charge of Discrimination.  Doc. 86 at 4.

However, Defendants argue that because Plaintiff did not raise the "continuing violation

doctrine" in her First Amended Complaint, she may not avail herself of this argument in

responding to their Motion to Dismiss.  This misapprehends the Court's role in evaluating a

motion to dismiss for failure to state a claim; Plaintiff is not required to present a fully-developed

legal theory in her First Amended Complaint.  *Cf. Skinner v. Switzer*, 131 S. Ct. 1289, 1296

(2011) (under Rule 8 "a complaint need not pin plaintiff's claim for relief to a precise legal

theory.").  While it appears that some of the allegations in Plaintiff's First Amended Complaint

occurred more than 300 days before Arthur filed her Charge of Discrimination, given the fact-

contingent nature of the theory, the Court cannot say at this stage that the "continuing violation"

theory is unavailable to her.  *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 631-32 (10th

Cir. 2012) (explaining that the "continuing violation doctrine allows a plaintiff to recover for

8

discriminatory acts that occurred prior to the statutory limitations period if they are part of a

continuing policy or practice that includes the act or acts within the statutory period"); *Duncan v.*

*Manager, Dep't of Safety, City & Co. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005)

(explaining that a "series of alleged events comprises the same hostile environment where the

pre- and post-limitations period incidents involved the same type of employment actions,

occurred relatively frequently, and were perpetrated by the same managers").

However, the continuing violation theory is not available for discrete acts, including

retaliation.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002) ("discrete

discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in

timely filed charges" and "[e]ach incident of discrimination and each retaliatory adverse

employment decision constitutes a separate" adverse action); *Davidson v. America Online, Inc.*,

337 F.3d 1179, 1184-85 (10th Cir. 2003) (explaining that "a continuing violation theory of

discrimination is not permitted for claims against discrete acts of discrimination" and

distinguishing "discrete acts" from hostile work environment claims, in which multiple events

form one unlawful practice in the aggregate).  Thus, while all of the allegations of retaliation in

the First Amended Complaint may be used as "background evidence in support of a timely

claim," any allegedly retaliatory conduct that occurred before more than 300 days before Arthur

filed her Amended Charge of Discrimination on October 3, 2012 is no longer actionable.

*Morgan*, 536 U.S. at 113.

Because the Court has already decided that Title VII is the sole remaining basis for relief

in this case, the Court will not address any statutes of limitations under New Mexico law.

**CONCLUSION**

The Court finds that Plaintiff's standalone claim for "Punitive Damages" must be stricken for failure to state a claim, that any common law claims must be dismissed as prohibited by the New Mexico Tort Claims Act, and that any retaliation claim based on events that occurred more than 300 days before October 3, 2012 is now time-barred.  Consequently, Plaintiff may now proceed solely on the basis of her Title VII claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss [Doc. 72] is **GRANTED IN PART**.

Dated this 12th day of March, 2015.

_____
**MARTHA VAZQUEZ**
UNITED STATES DISTRICT JUDGE